Patrick M. Flatley
United States Bankruptcy Judge
**Dated: Friday, March 13, 2009 11:25:30 AM**

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                          )
                                )
    ASHRAF S. BADOUR,          )     Case No. 5:08-bk-196
                                )
    Debtor.                    )     Chapter 7
                                )

### MEMORANDUM OPINION

WesBanco seeks to offset $12,760 in two general deposit accounts belonging to Ashraf Badour (the "Debtor") against the $12,760.31 pre-petition liability he owes to WesBanco on a note secured by the Debtor's deposit accounts. The Debtor objects to the motion on two grounds: (1) the deposit accounts contain funds traceable to a special, Keogh account, which funds are not subject to WesBanco's setoff rights, and (2) a portion of the funds in one of the accounts are claimed exempt in his bankruptcy case.

For the reasons stated herein, the court will grant WesBanco's request to exercise its setoff rights in the Debtor's deposit accounts.

### I. BACKGROUND

On February 27, 2001, the Debtor and WesBanco executed a promissory note (the "Note") that established a $35,000 line of credit. The Note includes a security agreement granting WesBanco a security interest in—and setoff rights against—the Debtor's deposit accounts. The Note expressly excludes any Keogh accounts from WesBanco's security interest and setoff rights. The Note further provides that the Debtor's deposit accounts secure any future advances by WesBanco to the Debtor. Thus, when the Debtor obtained a second, $30,000 line of credit (the "Credit Card") from WesBanco on May 2, 2007, the Credit Card debt was also secured by the Debtor's deposit accounts. When the Debtor filed his bankruptcy petition, he owed $12,760.31 to WesBanco on the Credit Card.

1

The Debtor maintains three accounts at WesBanco: (1) the Ashraf S. Badour M.D. Profit Sharing Plan (the "Keogh Account") with a balance of approximately $430,000, (2) a deposit account with a current balance of $849.80 and petition-date balance of $1,676.77, and (3) a deposit with a current balance of $11,910.20 and a petition-date balance of $17,040.51.

When the Debtor filed his bankruptcy petition, he claimed a $2,629.27 exemption in his deposit accounts as permitted under West Virginia Code § 38-10-4. In addition to the deposit account exemption, the Debtor also claimed the entire Keogh Account as exempt under 11 U.S.C. § 522(b)(3)(C). After the Debtor filed bankruptcy, WesBanco placed an administrative hold on his deposit accounts to preserve its setoff rights.

## II. DISCUSSION

The Debtor asserts WesBanco should not be allowed to exercise its setoff rights against his deposit accounts to the extent that funds in those accounts are traceable to transfers from his special, Keogh account. Also, the Debtor asserts that his claim of a $2,629.27 exemption in his deposit accounts prohibits WesBanco from offsetting that amount.

WesBanco contends that its setoff rights prevail regardless of the Debtor's claim of exemption. In WesBanco's view, by depositing the funds into the deposit accounts, the funds, from whatever source, became part of a general account subject to WesBanco's consensual security interest. Because bankruptcy exemptions generally do not affect consensual security interests, WesBanco requests permission to exercise its contractual rights in its collateral. The court agrees with WesBanco.

### A. WesBanco's Setoff Rights.

WesBanco asserts that it has the right to obtain the $12,760 in the Debtor's accounts under § 553(a) of the Bankruptcy Code, which provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the [bankruptcy case] against a claim of such creditor against the debtor that arose before the commencement of the [bankruptcy case]. "Section 553 does not create a right of setoff…. It merely preserves any right of setoff accorded by state law…." *Alexander & Jones v. Sovran Bank, et al. (In re Nat Warren Contracting Co., Inc.)*, 905 F.2d 716, 718 (4th Cir. 1990) (citations omitted). Therefore, West Virginia law must provide the substantive basis for WesBanco's right to offset the funds remaining in the deposit accounts.

2

The Supreme Court of Appeals of West Virginia has recognized that "the right to setoff may be provided for in a contract between the depositor and bank." *Southern Electrical Supply Co. v. Raleigh County National Bank*, 320 S.E. 2d 515, 519 n.7 (W. Va. 1984). To exercise contractual setoff rights the following three prerequisites must be established: 1) existence of a debtor-creditor relationship between bank and customer, 2) the customer's ownership of a general deposit account in the bank, and 3) mutuality of matured indebtedness. *Id.*

Here, the Note expressly grants WesBanco setoff rights against the Debtor's deposit accounts. Nevertheless, the three requirements for enforcing a setoff agreement must be met. The first and third prerequisites are not in dispute in this case. The Debtor's creation of a deposit account at WesBanco and the execution of the Credit Card and Note establish the contractual creditor-debtor relationship. *E.g., id.* ("A bank account creates a contractual debtor-creditor relationship between bank and depositor."). Together with the WesBanco deposit accounts, the Credit Card and Note establish a mutuality of indebtedness, because the Debtor owes the bank a matured debt while the bank owes the depositor money based on the deposit. *Id.*

**B. The Relevance of Tracing.**

According to the Debtor, the remaining requirement for setoff—that the offset account be a general deposit account—cannot be met on the basis that funds in the general account were drawn from a special account, and, thus, according to the principles of tracing, the deposits have retained their special nature. Because WesBanco's security interest does not attach to the special, Keogh Account, the Debtor asserts that tracing his deposit account funds from the Keogh Account will exclude a portion of the funds in the deposit accounts from WesBanco's security interest.

"A special account is segregated for a specific purpose, and a bank may not set off a depositor's indebtedness against such an account." *Southern Electrical Supply*, 320 S.E. 2d at 519. "A bank must have knowledge or reason to believe that an account is a special account before it can be deprived of its setoff rights." *Id.* at 520. Absent a contrary agreement or the bank's knowledge of a deposit's specific purpose, the deposit is treated as a general deposit. *See Zinn v. Mendel*, 9 W. Va. 580 (W. Va. 1876) ("When *money* has been deposited with a bank, and there has been no contract that a different rule should prevail, the bank where the deposit is made, ordinarily, becomes the owner of the *money,* and consequently a debtor for the amount, and under obligation to pay on demand, not the identical money received, but a sum equal in

3

legal value.") (emphasis in original); 1 *Michie's Jurisprudence of Virginia & West Virginia* § 50 (Matthew Bender & Co. eds., 2007) ("An account is a special account and thus exempt from setoff if (1) funds are deposited in the account for a special purpose and (2) the bank has notice of the special purpose.").

Special account funds generally lose their special purpose status when they are commingled with general account funds. *In re Nat Warren*, 905 F.2d at 718; *see also Feliciano v. McClung*, 556 S.E.2d 807 (W.Va. 2001) (holding that a tortfeasor lost statutory protection of his workers' compensation benefits when he changed the character of those funds by purchasing a certificate of deposit with the funds). A narrow exception exists where an account holder directs the account trustee to segregate a special deposit but the account trustee fails to earmark special account funds and segregate them from general deposits. *See State ex rel. Ins. Comm'r v. Blue Cross & Blue Shield of W. Va., Inc.*, 638 S.E.2d 144, 154 (W.Va. 2006) (holding that commingling will not impair the nature of special account funds where commingling is the result of an account trustee's breach of duty).

In this case, the Debtor, not WesBanco, commingled funds from his special, Keogh Account into his general deposit accounts. The Debtor did not notify WesBanco of the special nature of his transfer from his Keogh Account into his general deposit accounts. Thus, the general rule applies and the Debtor's act of depositing special account funds in general accounts without notifying WesBanco of a special purpose for the deposits destroyed the special nature of the funds. Even if the Debtor could establish that the deposits into the general deposit accounts originated from the exempted Keogh Account, the funds would nevertheless become part of the general account under the general rule of commingling. Therefore, the Debtor's ability to trace the transfer of special account funds into his general accounts is irrelevant to WesBanco's ability to exercise its setoff rights.

**C. The Debtor's Exemptions Vis-à-vis WesBanco's Security Interest.**

The Debtor's second argument to prevent WesBanco from exercising its setoff rights is that the $2,629.27 exemption claimed in the general accounts causes that amount to be immune from WesBanco's setoff rights.

Bankruptcy Code § 522 governs the exemption of property from the bankruptcy estate. Subparagraph 522(c)(2)(A)(i) provides that exempted property is not liable for pre-petition debts, "except…a debt secured by a lien that is…not avoided under subsection (f)…." Subsection

4

522(f) sets forth the exclusive rules for avoiding the fixing of liens, and does not allow the avoidance of the kind of consensual security interest presented in this case.

Importantly, the Debtor does not dispute the validity of the Note or WesBanco's security interest in his deposit accounts.  WesBanco's setoff rights, are, therefore, based on contract and not common law.  As subparagraph 522(c)(2)(A)(i) recognizes, exemptions cannot defeat a consensual security interest.  *E.g., In re Trevino*, 96 B.R. 608 (Bankr. E.D.N.C. 1989) ("When a debtor voluntarily grants a security interest in property or makes an absolute transfer, he gives up his exemption rights with respect to that property and he cannot recover those rights simply because the bankruptcy trustee can acquire rights superior to the transferee."); *In re Cabrillo*, 101 B.R. 443, 449 (Bankr. E.D. Pa. 1989) ("The Debtors' claim of exemption, even though unobjected to, would not eliminate a valid lien or security interest in their property claimed as exempt.").  Therefore, under § 522(c)(2)(A)(i), the Debtor's exemptions can have no affect on WesBanco's rights in the deposit accounts, because the deposit accounts are its collateral.

### III. CONCLUSION

WesBanco's motion to exercise its setoff rights shall be granted.  Bankruptcy Code § 553 permits WesBanco to exercise its setoff rights against the total amount of the deposit accounts as provided under non-bankruptcy law because the deposit accounts constitute commingled funds in a general account.  The Debtor's claimed exemption against the deposit accounts does not affect WesBanco's setoff rights because the Debtor's deposit accounts are WesBanco's collateral for the Credit Card debt under a valid security agreement.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.